```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                       CHARLESTON DIVISION
```

STEPHANIE LAFAUCI,

    Plaintiff,

vs.                                  Civil Action No.: **2:25-cv-00081**

BOONE COUNTY BOARD OF EDUCATION,
ANTHONY TAGLIENTE, individually and in
His official capacity, JACOB JONES, individually
And in his official capacity, and
JEFF HUFFMAN, individually and in his official capacity,

    Defendants.

### COMPLAINT

COMES NOW the plaintiff, Stephanie LaFauci, by counsel, Scott H. Kaminski and Ray, Winton & Kelley, PLLC, and for her Complaint against defendants Boone County Board of Education, Anthony Tagliene, Jacob Jones and Jeff Huffman for gender discrimination and retaliation in violation of Title VII and Title IX, states as follows:

### THE PARTIES

1. Plaintiff, Stephanie LaFauci, was at all relevant times a resident of Boone County, West Virginia.

2. Defendant Boone County Board of Education ("BCBOE") is a political subdivision of the state of West Virginia and upon information and belief, employs more than 15 employees.

1

3. Defendant Anthony Tagliente is and was at all times relevant an employee of Defendant BCBOE and a resident of Boone County, West Virginia.

4. Defendant Jacob Jones is and was at all times relevant an employee of Defendant BCBOE and a resident of Boone County, West Virginia.

5. Defendant Jeff Huffman is and was at all relevant times an employee of Defendant BCBOE and also supervised Plaintiff at Logan County Board of Education.

**NATURE OF CLAIM AND BASIS FOR VENUE AND JURISDICTION**

6. Plaintiff has filed a charge before the United States Equal Employment Opportunity Commission ("EEOC") relating to this claim of Title IX retaliation.

7. Plaintiff's charge was dually filed with the West Virginia Human Rights Commission ("WVHRC").

8. Plaintiff's Right to Sue Notice from the WVHRC was received on or about November 20, 2024, and Plaintiff's Right to Sue Notice from the EEOC was received on or about January 8, 2025. *See Exhibits 1 and 2.*

9. This action is brought for discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 as codified, 42 U.S.C. §§2000e to 2000e-17 based on Plaintiff's gender and based on Title IX which prohibits retaliation for reporting, testifying or participating in a Title IX Complaint as

2

set forth at Title IX of the Education Amendments of 1972 as codified, 20 U.S.C. §1681 et seq. 34 CFR §106.71.

10. This action is also brought pursuant to 42 U.S.C. §12203 which prohibits retaliation for having filed an EEOC complaint.

11. This action is also brought pursuant to the West Virginia Human Rights Act, W. Va. Code § 5-11-1, *et seq.* and *Harless v. First National Bank in Fairmont,* 246 S.E.2d 270 (W.Va. 1978) or a good faith extension thereof.

12. The acts or omissions by the defendants occurred in Boone County, West Virginia, and are brought under federal law, therefore, venue and jurisdiction are proper with this Court.

## STATEMENT OF FACTS

13. Plaintiff was employed by Defendant BCBOE as a physical education teacher and girls' volleyball and basketball coach from August 17, 2011 until her resignation in August of 2022, then rehired in 2023 where she remains employed to the present.

14. On or about June 1, 2018, Plaintiff engaged in protected activity when she made a complaint pursuant to Title IX regarding inequitable treatment by Defendant BCBOE with regard to the disparities between the girls' softball facility and the boys' baseball facility.

15. Plaintiff almost immediately experienced retaliation by Defendant BCBOE.

16. For instance, Defendant BCBOE then decided to limit the girls' volleyball and basketball teams that Plaintiff coached to only three for the entire season which consisted of more than three away games.

17. During the previous season, Defendant BCBOE did not limit the number of buses available to the girls' volleyball and basketball teams that Plaintiff coached.

18. During that same time period, the boys' football and basketball teams were provided buses for all away games which totaled more than three.

19. Plaintiff was told by Defendants that these male sports were revenue generating and therefore were permitted to use buses for all games.

20. In addition, Plaintiff was required to submit a written plan as to how her teams would travel to away games and how meals would be provided while none of the coaches of the boys' teams were required to do so.

21. On or about September 17, 2018, Plaintiff engaged in protected activity by attending a meeting of Defendant BCBOE's board to raise concerns about the bussing issues for her teams and asked for a copy of Defendant BCBOE's policy regarding transportation of teams to athletic events but none was cited or provided.

22. Thereafter, the Principal required Plaintiff to compose lesson plans for her volleyball practices while none of the coaches of the boys' teams were so required.

23. In 2018, Defendant Tagliente, in the course and scope of his employment with Defendant BCBOE, had the duty and responsibility for Title IX compliance.

24. An investigation ensued by the Department of Education which led to a mediation on or about October 25, 2018.

25. The mediation settlement agreement called for Defendant BCBOE to provide for the girls' softball team a press box with concession stand comparable to the boys' baseball field along with a public address system, lights and bleachers by April 1, 2019.

26. Defendant Tagliente was directly involved as the decision maker for Defendant BCBOE at the mediation process.

27. Defendant BCBOE's board minutes of February 18, 2019 reflect purchase of the bleachers.

28. Defendant BCBOE falsely claimed that it had complied with the mediation agreement by providing upgrades to the girls' softball field and facility.

29. By April 1, 2019, none of the agreed improvements had been made including installation of the purchased bleachers.

30. Until sometime in 2024, Defendant BCBOE has failed to meet its obligations in full relative to the girls' softball

5

field and facilities under the mediation agreement having not installed a public address system nor having painted the facility by the time agreed upon.

31. When it was brought to the department of education's attention that Defendant BCBOE had not complied with the mediation settlement agreement, Defendant BCBOE appears to have believed that Plaintiff made a second separate Title IX complaint.

32. On or about August 19, 2019, a field trip to Washington, D.C. for students that had been approved for many years prior was denied.

33. The 2019 trip was requested by Plaintiff.

34. The prior trips to D.C. had been requested by other persons.

35. The denial of the D.C. field trip requested by Plaintiff was in retaliation for her engagement in the protected activity of having made a Title IX complaint.

36. On or about October 1, 2019, the State of West Virginia approved a three step pay increase for special education teachers.

37. Plaintiff qualified for this pay increase.

38. Defendant Huffman refused to provide Plaintiff the pay increase mandated by state law in retaliation for her Title IX Complaint.

39. Plaintiff was forced to file a grievance which she won.

40. On or about September 16, 2020, Plaintiff sent an email to Defendant BCBOE as the lights had been installed on the girls' softball field but the press box and concession stand had not yet been started.

41. On or about February 23, 2021, Plaintiff emailed the department of education concerning comments made at a board meeting of Defendant BCBOE asking why it had to provide the improvements for the girls' softball team at Van High School and that Plaintiff and the community should have been required to raise the money.

42. On or about May 24, 2021, Plaintiff was accosted by a parent who came onto the field and threatened Plaintiff.

43. Plaintiff reported this incident to both Defendant Jones and Defendant Tagliente.

44. Prior to this incident, parents who threatened coaches were banned for one year from extracurricular activities.

45. On this occasion, this parent was permitted to continue to attend extracurricular activities.

46. Defendants' failure to discipline this parent was in retaliation against Plaintiff for her Title IX Complaint.

47. During Plaintiff's evaluation in 2022, Defendant Jones who was principal at the time at Plaintiff's school, failed

7

to finalize Plaintiff's evaluation with her in violation of state policy and provided false information about Plaintiff without affording Plaintiff an opportunity to rebut the same in violation of state policy which information is now part of Plaintiff's employment record.

48. Defendant Jones' conduct was in retaliation for Plaintiff's Title IX Complaint.

49. Thereafter, Plaintiff applied for three positions for which she was qualified and for each a less qualified applicant was hired.

50. On or about July 1, 2022, Plaintiff applied for the Assistant Principal/Athletic Director at Van High School within Defendant BCBOE.

51. A male applicant was hired despite Plaintiff's superior qualifications based on her gender and in retaliation for having made a Title IX complaint.

52. Plaintiff did not even get a second interview.

53. In August of 2022, Plaintiff resigned her position with Defendant BCBOE due to the discrimination and retaliation she had faced and took a position with Logan County Board of Education ("Logan").

54. While at Logan, Defendant Huffman was appointed Superintendent at Logan and retaliated against Plaintiff for her

8

Title IX Complaint by refusing to compensate her for her planning period.

55. Plaintiff engaged in protected activity by filing a grievance on which she prevailed and obtained her back pay.

56. On or after July 12, 2023, Plaintiff applied for the Assistant Principal/Athletic Director position at Sherman High School, part of Defendant BCBOE.

57. Interviews for this position were conducted by Defendants Barnette and Linville.

58. Defendant Barnette was the Principal and Defendant Linville was the Transportation Director.

59. Defendants Barnette and Linville, in the course and scope of their employment, hired a less qualified male applicant discriminating against Plaintiff based on her gender and in retaliation for having filed a Title IX complaint.

60. The hiring of the male candidate for the Assistant Principal/Athletic Director position at Sherman High School occurred five days after the position had been posted.

61. On or about August 1, 2023, Plaintiff applied and was hired for a position at Scott High School, part of Defendant BCBOE.

62. When rehired, Plaintiff had applied for the position of Physical Education Health Teacher at which time

9

Plaintiff was the only applicant for the two vacant positions that had been posted.

63. On or about September 1, 2023, Plaintiff also applied for was Child Nutrition Director with Defendant BCBOE.

64. Defendant Tagliente, in his position as Assistant Superintendent (previously served as Human Resources Director and oversaw Title IX compliance including Plaintiff's Complaint) for Defendant BCBOE participated in the interview of Plaintiff for this position.

65. On or about October 2, 2023, Defendant BCBOE retaliated against Plaintiff by hiring a female candidate for the Child Nutrition Director position who had been only an elementary school teacher with no management or nutrition experience.

66. Plaintiff 20 years of management experience and a background in nutrition yet was not even provided a second interview for the position in retaliation for her Title IX complaint.

67. On or about October 9, 2023, Plaintiff filed her complaint with the EEOC.

68. After her initial interview by the EEOC had been conducted, EEOC notified Defendant BCBOE of Plaintiff's complaint on or about November 10, 2023.

69. Five days later, Defendant BCBOE retaliated against Plaintiff for engaging in the protected activity of filing an EEOC

complaint by suddenly and without warning discontinuing use of Plaintiff's business as an approved vendor for Defendant BCBOE for a school fundraiser.

70. Just prior to this, Plaintiff had completed a similar fundraiser for Defendant BCBOE through her business.

71. As a direct result of Defendants' retaliatory and discriminatory conduct, Plaintiff has suffered lost wages both past and future, emotional distress, annoyance, aggravation and inconvenience and such other damages as may be proven through discovery.

72. Further, Plaintiff is entitled to recover punitive damages for Defendants' malicious conduct as well as her attorneys' fees and expenses.

## **COUNT I – GENDER DISCRIMINATION/RETALIATION IN VIOLATION OF TITLE VII**

73. Plaintiff incorporates herein by reference all of her allegations made in Paragraphs 1-72 of her Complaint.

74. Plaintiff has exhausted her Federal Administrative remedies having filed a charge with the Equal Opportunity Employment Commission, which in turn dually filed the Complaint with the West Virginia Human Rights Commission which both issued a Notices of Right to Sue, attached hereto as Exhibits 1 and 2, received on or about November 20, 2024, and January 8, 2025.

75. Defendants have discriminated against Plaintiff based on her gender and have retaliated against her for engaging in protected activity related to her gender discrimination complaints in violation of Title VII of the Civil Rights Act of 1964 as codified, 42 U.S.C. §§2000e to 2000e-17.

76. As a direct and proximate result of said illegal gender discrimination and retaliation by Defendants, Plaintiff has sustained injuries and damages including lost wages and benefits, emotional distress, annoyance and inconvenience and such other damages as may become evident through discovery.

77. Due to the illegal and malicious conduct of Defendants, Plaintiff is entitled to an award of punitive damages as well as attorney's fees and costs.

**COUNT II – RETALIATION IN VIOLATION OF TITLE IX**

78. Plaintiff incorporates herein by reference all of her allegations made in Paragraphs 1-77 of her Complaint.

79. Title IX prohibits retaliation for reporting, testifying or participating in a Title IX Complaint as set forth at Title IX of the Education Amendments of 1972 as codified, 20 U.S.C. §1681 et seq. 34 CFR §106.71.

80. As set forth hereinabove, Defendants retaliated against Plaintiff for having made a Title IX Complaint.

81. As a direct and proximate result of said illegal retaliation by Defendants, Plaintiff has sustained injuries and

damages including lost wages and benefits, emotional distress, annoyance and inconvenience and such other damages as may become evident through discovery.

82. Due to the illegal and malicious conduct of Defendants, Plaintiff is entitled to an award of punitive damages as well as attorney's fees and costs.

## COUNT III – EEOC RETALIATION

83. Plaintiff incorporates herein by reference all of her allegations made in Paragraphs 1-82 of her Complaint.

84. 42 U.S.C. §12203 prohibits retaliation for having filed an EEOC complaint.

85. As set forth hereinabove, Defendants retaliated against Plaintiff after she filed her EEOC Complaint.

86. As a direct and proximate result of said illegal gender discrimination and retaliation by Defendants, Plaintiff has sustained injuries and damages including lost wages and benefits, emotional distress, annoyance and inconvenience and such other damages as may become evident through discovery.

87. Due to the illegal and malicious conduct of Defendants, Plaintiff is entitled to an award of punitive damages as well as attorney's fees and costs.

## COUNT IV – VIOLATIONS OF THE WEST VIRGINIA HUMAN RIGHTS ACT/*HARLESS* ACTION

88. Plaintiff incorporates herein by reference all of her allegations made in Paragraphs 1-87 of her Complaint.

89. The Defendants' discrimination and retaliation against Plaintiff was also illegal, *to wit*:

    a. Plaintiff was discriminated and retaliated against based on her gender after making a complaint under Title IX that was based on disparate treatment of the girls' softball facilities;

    b. Defendants' treatment of Plaintiff was substantially motivated for the purpose of discriminating against her for her gender and therefore the retaliation was illegally motivated; and

    c. Defendants' actions as set forth above were malicious, in particular in that Defendants knew that Plaintiff had engaged in protected activity related to gender which resulted in a mediation settlement agreement which Defendant BCBOE failed to honor.

90. All of Defendants' conduct as stated above is in violation of the West Virginia Human Rights Act, W. Va. Code § 5-11-1, *et seq*. and *Harless v. First National Bank in Fairmont,* 246 S.E.2d 270 (W.Va. 1978) or a good faith extension thereof.

91. As a result of said discrimination and retaliation, Plaintiff Tasha Hewitt has sustained lost wages both past and future, emotional distress; aggravation, annoyance and inconvenience; and attorney fees and seeks recovery for the same.

92. As a result of the malicious and intentional conduct of the Defendants, Plaintiff is entitled to an award of punitive damages.

WHEREFORE, Plaintiff Stephanie LaFauci demands recovery from Defendants Boone County Board of Education, Anthony Tagliente, Darlene McClure, Barry Brown, Todd Barnette, Brian Linville and Jeff Huffman in an amount sufficient to compensate her for her damages set forth herein, as well as, her costs and attorney's fees, prejudgment and post judgment interest, punitive damages from those Defendants from whom she can legally recover punitive damages, and all other relief this Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

                              STEPHANIE LAFAUCI

                              By Counsel

s/Scott H. Kaminski
Scott H. Kaminski (WVSB 6338)
Ray, Winton & Kelley, PLLC
109 Capitol Street, Suite 700
Charleston, WV 25301
304-342-1141
304-342-0691 fax
ScottKaminski@rwk-law.com