# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

STEPHANIE LAFAUCI,

          Plaintiff,

v.                               CIVIL ACTION NO.  2:25-cv-00081

BOONE COUNTY BOARD OF EDUCATION, et al.,

          Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants', Boone County Board of Education ("BCBOE"); Anthony Tagliente; Jacob Jones; and Jeff Huffman (collectively, "Defendants") Motion to Dismiss. (ECF No. 9.) For the reasons discussed herein, the motion is **GRANTED.**

### *I.      BACKGROUND*

This action arises from Plaintiff Stephanie LaFauci's ("Plaintiff") employment as a teacher for BCBOE. Plaintiff was employed by BCBOE as a physical education teacher and girls' volleyball and basketball coach from August 17, 2011, until her resignation in August of 2022, and then was subsequently rehired in 2023. (ECF No. 1, ¶ 13.) On June 1, 2018, Plaintiff alleges she engaged in protected activity when she made a complaint under Title IX regarding inequitable treatment within BCBOE athletic programs. (*Id*. at ¶14.) Specifically, Plaintiff complained of inequitable treatment between the girls' softball facility and the boys' baseball facility. (*Id*.)

1

Plaintiff alleges that the Defendants began retaliating against her "almost immediately."  (*Id*. at ¶15.)

According to Plaintiff, the retaliation took the form of "limit[ing] the girls' volleyball and basketball teams that Plaintiff coached to only three for the entire season which consisted of more than three away games," limiting "the number of buses available to the girls' volleyball and basketball teams that Plaintiff coached," and requiring Plaintiff "to submit a written plan as to how her teams would travel to away games and how meals would be provided while none of the coaches of the boys' teams were required to do so."  (*Id*. at ¶15–20.)

On September 17, 2018, Plaintiff attended a meeting of BCBOE's board to raise concerns about the bussing issues for her team and to obtain a copy of BCBOE's transportation policy.  (*Id*. at ¶21.)  Plaintiff claims that the Defendants retaliated against her again following this action. (*Id*.)  Plaintiff alleges she was required to submit lesson plans for her volleyball practices while none of the coaches of the boys' teams were required to do so.  (*Id* at ¶22.)

Following Plaintiff's Title IX complaint, the Department of Education initiated an investigation, which led to a mediation on October 25, 2018.  (*Id*. at ¶24–25.)  Plaintiff alleges Defendants subsequently failed to comply fully with the obligations imposed by the mediation agreement, particularly with respect to improving the girls' athletic facilities and fields.  (*Id*. at ¶28–30.)  Plaintiff further alleges that when the Department of Education was informed that BCBOE had not complied, BCBOE believed that Plaintiff made a second separate Title IX complaint.  (*Id*. at ¶31.)

Plaintiff alleges that on August 19, 2019, BCBOE retaliated against her for making a Title IX complaint by denying a field trip request.  (*Id*. at ¶¶31–35.)  Plaintiff also alleges that on

October 1, 2019, she did not receive a state mandated pay increase for special education teachers. (*Id*. at ¶36.) She claims that this failure to increase her compensation constituted further retaliation for her Title IX activity. (*Id*.)

On May 24, 2021, Plaintiff alleges that a parent entered the athletic field and threatened her. (*Id*. at ¶43.) Plaintiff claims she reported this incident to both Defendant Jones and Defendant Tagliente. (*Id*. at ¶44.) Plaintiff claims that BCBOE previously enforced a policy under which parents who threatened coaches were banned for one year from extracurricular activities. (*Id*. at ¶45.) However, in this instance, the parent was permitted to continue attending extracurricular activities. (*Id*. at ¶46.) Plaintiff maintains the Defendants' failure to discipline this parent was in retaliation against Plaintiff for her Title IX Complaint. (*Id*.)

Plaintiff claims that during an employment evaluation in 2022, Defendant Jones failed to finalize the evaluation with her in violation of state policy. (*Id*. at ¶48.) Plaintiff further contends Defendant Jones provided false information about her without affording her an opportunity to rebut the same in violation of state policy. (*Id*.) Plaintiff claims Defendant Jones' conduct was due to her gender and in retaliation for her Title IX Complaint. (*Id*.)

On or about July 1, 2022, Plaintiff applied for the Assistant Principal/Athletic Director at Van High School within BCBOE. (*Id*. at ¶51.) Plaintiff alleges that a less qualified male applicant was hired in retaliation for having made a Title IX complaint. (*Id*.) In August of 2022, Plaintiff resigned her position with BCBOE due to the discrimination and retaliation she had faced and took a position with Logan County Board of Education ("LCBOE"). (*Id*. at ¶54.) While at LCBOE, Plaintiff claims Defendant Huffman was appointed Superintendent at LCBOE and retaliated against Plaintiff for her Title IX Complaint by refusing to compensate her for her

planning period.   (*Id*. at ¶54.)   In response Plaintiff engaged in an alleged protected activity by filing a grievance on which she prevailed and obtained her back pay.   (*Id*. at ¶55.)

On or after July 12, 2023, Plaintiff applied for the Assistant Principal/Athletic Director position at Sherman High School, part of Defendant BCBOE.   (*Id*. at ¶56.)   Plaintiff alleges that Defendants Barnette and Linville hired a less qualified male applicant, discriminating against her based on her gender and in retaliation for having filed a Title IX complaint.   (*Id*. at ¶59.)

On or about August 1, 2023, Plaintiff applied and was hired for a position at Scott High School, part of BCBOE.   (*Id*. at ¶61.)   On September 1, 2023, Plaintiff applied for a Child Nutrition Director position with BCBOE.   (*Id*. at ¶63.)   Plaintiff claims that on or about October 2, 2023, BCBOE retaliated against her for filing a Title IX complaint by hiring a female candidate for the Child Nutrition Director position who had been only an elementary school teacher with no management or nutrition experience.   (*Id*. at ¶65.)

In response to this alleged conduct, Plaintiff filed a charge with the EEOC ("Charge") on October 9, 2023, which was then transferred to the West Virginia Human Rights Commission ("WVHRC") on or about December 8, 2023.   (ECF No. 10 at 6).   EEOC notified BCBOE of Plaintiff's complaint on or about November 10, 2023. (ECF No. 1. 68.)   On October 14, 2023, Plaintiff asserts BCBOE retaliated against her for filing an EEOC complaint by suddenly and without warning discontinuing use of Plaintiff's business as an approved vendor for Defendant BCBOE for a school fundraiser.   (*Id*. at ¶69.)   The EEOC and WVHRC issued a Notices of Right to Sue on November 30, 2024 and January 8, 2025.   (*Id*. at ¶74.)

Consequently, Plaintiff brought this suit against the Defendants.   (*See* ECF No. 1)   The Complaint contains the following counts: (1) Count I – Gender Discrimination/Retaliation in

4

Violation of Title VII; (2) Count II – Retaliation in Violation of Title IX; (3) Count III – EEOC

Retaliation; and (4) Count IV – Violations of the West Virginia Human Rights Act ("WVHRA").

(*Id*.)

Defendant filed the pending Motion to Dismiss on April 28, 2025.   (ECF No. 9.)   Plaintiff

filed a response, (ECF No. 12), and the Defendants filed a reply, (ECF No. 13).   As such, this

motion is fully briefed and ripe for adjudication.

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the

legal sufficiency of a civil complaint.   Fed. R. Civ. P. 12(b)(6).   A plaintiff must allege sufficient

facts, which, if proven, would entitle him to relief under a cognizable legal claim.   *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 554–55 (2007).   A case should be dismissed if, viewing the

wellpleaded factual allegations in the complaint as true and in the light most favorable to the

plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on

its face."   *Id*. at 570.   In applying this standard, a court must utilize a two-pronged approach.

First, it must separate the legal conclusions in the complaint from the factual allegations.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Second, assuming the truth of only the factual

allegations, the court must determine whether the plaintiff's complaint permits a reasonable

inference that "the defendant is liable for the misconduct alleged."   *Id*.   Well-pleaded factual

allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause

of action will not do."   *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214

(4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are

insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).   A plaintiff's "[f]actual allegations

5

must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

A Rule 12(b)(6) motion may also seek dismissal based on an applicable statute of limitations in certain circumstances. "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston–Salem,* 85 F.3d 178, 181 (4th Cir.1996). *See also Darden v. Cardinal Travel Ctr.,* 493 F.Supp.2d 773, 775 (W.D. Va.2007) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993)) ("[A] defense of the statute of limitations may be raised in a Rule 12(b)(6) motion where that defense appears clearly on the face of the complaint.").

The requirement that a charge of discrimination be filed timely with the EEOC is similar to a statute of limitations defense in that it is an affirmative defense subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S. Ct. 1127, 1133 (1982). Therefore, a defendant may seek dismissal pursuant to Rule 12(b)(6) where it asserts that a plaintiff has failed to file a charge in a timely manner. *Douglas v. Norton,* 167 Fed.Appx. 698, 704–05 (10th Cir.2006).

### III.    DISCUSSION

#### A. Official Capacity Claims and Punitive Damages

##### i.    Official Capacity Claims

The Court will begin with the official capacity claims. The Defendants move to dismiss all claims against Defendants Anthony Tagliente, Jacob Jones, and Jeff Huffman, in

their official capacities on the grounds they are duplicative of the claims against BCBOE.   (ECF No. 10 at 5.)   The Court agrees.

"An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985).   Thus, in official-capacity suits, the "real party in interest" is not the named official, but the entity that employs him; and the damages sought to be recovered will not come from the pockets of the named official, but rather from the treasury of the entity that employs him.   *Id*. As such, suits against individuals in their official capacities should be dismissed as duplicative when the entity that those individuals serve is also named as a defendant.   *See Love–Lane v. Martin,* 355 F.3d 766, 783 (4th Cir.2004).

Here, Plaintiff has named BCBOE as a defendant, in addition to suing Tagliente, Jones, and Huffman in both their individual and official capacities.   (ECF No. 1 at 1.)   Because an official-capacity claim is functionally a claim against the government entity itself, permitting those claims to proceed would amount to suing BCBOE twice in the same action.

Accordingly, Plaintiff's claims against Tagliente, Jones, and Huffman in their official capacities are **DISMISSED** as duplicative of the claims asserted against BCBOE.

ii.      *Punitive Damages*

The Defendants also argue that the claims against them for punitive damages should be dismissed   because West   Virginia   Code   Section   29-12A-17 prohibits   an   award of punitive damages against a  municipality  or  political  subdivision.   (ECF No.  10 at  13.) Plaintiff concedes that West Virginia law does, in fact, prohibit an award of punitive damages to a municipality or political subdivision.   (*See* ECF No. 12 at 9.)   Accordingly, the Defendants'

motion to dismiss the claims for punitive damages against BCBOE should be granted.   However, Plaintiff is not prohibited from recovering punitive damages against the Defendants in their individual capacities.  *See P.A. v. Fayette Cnty. Bd. of Educ*., No. 2:19-CV-00705, 2020 WL 4740481M *11 (S.D. W. Va. Aug. 14, 2020) (holding that under the plain language of the statute, it does not prohibit or otherwise limit punitive damages against employees of political subdivisions.) (Johnston, J.); *see also Huggins v. City of Westover Sanitary Sewer Bd*., 712 S.E.2d 482 (W.Va. 2011).

Therefore, the claims for punitive damages against BCBOE are **DISMISSED**.

### B. Timeliness

The Defendants argue that "many" of Plaintiff's claims are time-barred, because they are predicated on alleged discriminatory/retaliatory acts that occurred outside of the applicable statutory windows and weren't included in the Charge.  (ECF No. 10 at 9.)  As such, the Defendants contend that the claims were not preserved by their "respective tolling provisions[.]" (*Id*.)  Notwithstanding the Defendants' conflation of multiple distinct legal concepts, the Court will disentangle those issues and address each in turn.

### i.    Title VII

First, the Defendants argue that some of Plaintiff's Title VII claims are time-barred because they relate to incidents that occurred more than 300 days before Plaintiff's filing of the Charge with the EEOC.   (*See* ECF No. 10 at 9.)   The Court agrees.

Before filing suit under Title VII, a plaintiff must file a charge with the EEOC or, in a "deferral" jurisdiction such as West Virginia, with an appropriate state or local agency, within a specified time "after the alleged unlawful employment practice occurred."   42 U.S.C. §§ 2000e–

5(e)(1), 2000e–5(f)(1); *see Sloop v. Memorial Mission Hosp., Inc*., 198 F.3d 147, 148 (4th Cir. 1999). Title VII establishes two possible limitation periods for filing a discrimination charge: the basic limitations period is 180 days after the alleged unlawful employment practice but can be extended to 300 days in a deferral state if state law proscribes the alleged employment practice and the charge is first filed with a state deferral agency. 42 U.S.C. § 2000e–5(e)(1); *see also Whitaker v. Nash Cnty*., 504 F. App'x 237, 240 (4th Cir. 2013). When a charge is filed with the EEOC and referred to the appropriate state deferral agency, the 300-day period applies. *See EEOC v. Commercial Office Prods. Co.,* 486 U.S. 107, 111, 122–25 (1988).

Here, Plaintiff filed her Charge with the EEOC on October 9, 2023, which was then transferred to the WVHRC on or about December 8, 2023. (ECF No. 10 at 6.) Applying the 300-day filing window, Plaintiff cannot prevail on any claim under Title VII based upon misconduct alleged to have occurred before December 12, 2022. The pleadings establish that Plaintiff alleged within her Charge that she applied to three positions in total that she was qualified for yet not hired: (1) one position in October 2023, and (2) two other positions sometime in 2021 and 2022. (ECF No. 10 at 6.) Moreover, the Defendants allege that the Charge did not include any of the allegations of discriminatory retaliation asserted in paragraphs 15–20 (occurring in 2018), 22 (2018), 32–38 (2019), 42–46 (2021), 47–48 (2022), and 54–55 (2022) of the Complaint. (ECF No. 10 at 7.)[1]

---

[1] The Defendants' argument references allegations "not raised in the Charge of Discrimination." (ECF No. 10 at 7.) The Fourth Circuit has made it clear that only those discrimination claims stated in an administrative charge, those reasonably related to the original charge, and those developed by reasonable investigation of the original charge, may be maintained in a subsequent lawsuit. *See Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 963 (4th Cir. 1996). This is known as the exhaustion requirement. *Id*. However, this requirement is not jurisdictional but rather a claim-processing rule. *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 543 (2019). As such, failure to exhaust administrative remedies operates as an affirmative defense that may be forfeited or waived if not timely asserted. *Id*. at 549. Despite the administrative filing requirement, because the Defendants frame their arguments for dismissal

Thus, Plaintiff's only timely raised issue in the Charge is her allegation that she was rejected from an open position in 2023.  (*Id*. at 7.) [2]  Accordingly, applying the October 9, 2023, charge date, Plaintiff's Title VII retaliation/discrimination claim is time-barred with respect to all alleged incidents occurring before December 12, 2022.[3]

ii.   WVHRA

Plaintiff's WVHRA claims are similarly untimely.  A plaintiff making claims of discrimination under the WVHRA with the WVHRC is required to file a complaint with the WVHRC "within 365 days after the alleged act of discrimination."  *Woodrum v. Thomas Memorial Hosp. Foundation Inc*., 45 F.Supp.2d 538, 540 (S.D. W.Va. 1999).  A plaintiff, however, may also choose to file the complaint in a court instead of with the WVHRC.  *Id*.  If a plaintiff chooses to do so, a two-year statute of limitations applies.  *Sesay v. Montgomery Ward & Co., Inc*., 937 F.Supp. 563, 566–67 (S.D. W.Va. 1996) (citations omitted).  The plaintiff must choose one of these two methods of bringing a claim under the WVHRA.  *Id*.  The statute of limitations for employment discrimination cases brought to enforce rights under the WVHRA,

---

solely in terms of statutes of limitations and tolling, and do not expressly assert failure to exhaust, the Court confines its analysis to the arguments presented.

[2]  Plaintiff also asserts a claim of EEOC retaliation under 42 U.S.C. § 12203.  (ECF No. 1, ¶84.)  Claims of retaliation brought pursuant to 42 U.S.C. §12203 are governed by 42 U.S.C. § 12117 which provides "[t]he powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to … to any person alleging discrimination *on the basis of disability* in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment." (emphasis added).  Plaintiff does not allege disability discrimination.  Accordingly, this claim is **DISMISSED**.

[3]  The Defendants claim that only "grounds … asserted in the charge remained protected by the applicable tolling provisions."  (ECF No. 10 at 9.)  However, the Defendants fail to reference any specific tolling provisions.  Even so, while it is true that Title VII claims may be tolled for a temporary period during the administrative process, that only applies to timely claims.  *See Nealon v. Stone*, 958 F.2d 584, 593 (4th Cir.1992) (holding that pending EEOC determinations tolled a statute of limitations but noting that "it is not the mere filing of a claim that we hold equitably tolls the statute, but rather an apparently favorable agency decision.")  Thus, in the absence of equitable tolling or equitable estoppel, neither of which Plaintiff asserts, the mere filing of a charge does not revive claims that were already untimely.  *See Lekas v. United Airlines, Inc*., 282 F.3d 296, 301 (4th Cir.2002).

including allegations of discrimination, begins to run from the date a plaintiff first learns of the adverse employment decision. *Metz v. E. Associated Coal, LLC*, 239 W. Va. 157, 161, 799 S.E.2d 707, 710 (2017).

Here, Plaintiff filed her Charge with the EEOC on October 9, 2023, which was then transferred to the WVHRC on or about December 8, 2023. (ECF No. 10 at 6.) Applying the 365-day filing period, any conduct occurring before December 8, 2022, is untimely as a matter of law and thus **DISMISSED**.

    *iii.*    *Title IX*

Plaintiff's Title IX retaliation claims are likewise untimely. The Defendants contend that Plaintiff's Title IX claims are timely to the extent they accrued no earlier than October 2, 2021. (ECF No. 10 at 9.) In doing so, the Defendants are calculating the limitations period based on the date Plaintiff filed her EEOC Charge, rather than from the date of filing this civil action. (*Id*.) This calculation is incorrect.

Title IX does not contain an express statute of limitations. *Wilmink v. Kanawha Cnty. Bd. of Educ.*, 214 F. App'x 294, 296 n.3 (4th Cir. 2007). Thus, courts should apply "the most closely analogous statute of limitations under state law." *Reed v. United Transp. Union*, 488 U.S. 319, 323–24 (1989); *Wolsky v. Med. Coll. of Hampton Rds.*, 1 F.3d 222, 224 (4th Cir. 1993). In this case, the most analogous statute of limitations under state law is West Virginia's two-year personal injury limitations period. *See* W. Va.Code § 55–2–12 (2000).

"Title IX has no administrative exhaustion requirement and no notice provisions." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 247 (2009). As a result, the filing of an EEOC charge is not a prerequisite to suit and does not, by itself, determine the

limitations period for a Title IX claim. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 (1975) (holding that a limitations period does not toll, and thus the statute of limitations continues to run, on a claim that requires no administrative exhaustion while a plaintiff pursues administrative remedies on other claims that do require exhaustion.)

Further, although the statute of limitations is defined by state law, the question of when a cause of action accrues is one of federal law. *Howell v. Cnty. Comm. of Hampshire County*, No. 21-1023, 2022 WL 61428 (4th Cir. Jan. 6, 2022). Accordingly, a plaintiff's Title IX claim accrues when she has or should have "possession of the critical facts that [s]he has been hurt and who has inflicted the injury." *United States v. Kubrick*, 444 U.S. 111, 122 (1979). "When the plaintiff becomes aware of these two facts, he is on inquiry notice and has a duty to inquire about reasonably discoverable details." *Slaey v. Adams*, No. 1:08cv354, 2008 WL 5377937 (E.D. Va. Dec. 23, 2008).

Thus, Plaintiff was required to file suit within two years of the accrual of each claim. *Id*. Here, Plaintiff possessed the critical facts necessary to place her on notice of her injury as early as 2018, when she initially filed her Title IX complaint, and she alleges similar conduct spanning the following five years. (*See generally* ECF No. 1, ¶¶15–70.) Plaintiff did not file this action until February, 2025. (*Id*. at 1.) Therefore, any Title IX claims based on acts occurring before February 2023 are **DISMISSED** as time barred.

    iv.   *Continuing Violation Doctrine*

Plaintiff does not dispute the applicability of the above-mentioned statutory limitation periods. (*See* ECF No. 12 at 5.) Rather, she argues that the "continuing violation doctrine" makes all of her claims timely. (*Id*.) In reply, Defendants argue that the continuing

violation doctrine is inapplicable here because Plaintiff's claimed wrongs of discrimination and retaliation are considered "discrete acts" for purposes of determining statute of limitations issues. (ECF No. 13 at 3.)   (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).   The Court agrees.

The continuing violation doctrine does not operate as Plaintiff would have it apply. Rather, as explained in *Morgan* and later cases, acts that allegedly happened to Plaintiff—the denial of field trips, denial of pay increases, the failure to discipline a parent's outburst, alleged misconduct during an employment evaluation, and several failures to hire—are discrete acts, not "continuing violations."   *Id*.   With discrete acts, the statute of limitations begins to run when the act occurs.   *Id*. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer or *refusal to hire* are easy to identify.") (emphasis added).

Here, Plaintiff alleges acts of discrimination and retaliation beginning in 2018 after she filed her initial Title IX complaint, as well as failures to hire in 2021, 2022, and 2023.   (ECF No. 1, ¶¶15–70.)   Each of these alleged actions constitutes a discrete employment decision.   As explained above, many of these acts occurred well outside the applicable limitations' periods. The continuing violation doctrine does not make them timely.   *See Stanley v. Trs. of Cal. St. Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges[.]") (citing *Nat'l R.R. Passenger Corp*, 536 U.S. at 112–13).   Moreover, the "continuing ill effects of an original violation" do not constitute a continuing violation.   *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011).   Nor would subsequent failures to hire revive a time-barred failure to hire.   *Williams v. Giant Food, Inc.*, 370 F.3d 423, 428–29 (4th Cir. 2004).

13

Accordingly, Plaintiff's allegations concerning acts outside the applicable limitations' periods are not saved by the continuing violation doctrine and may not proceed.

### C. Failure to State a Claim

Lastly, the Defendants contend that the Complaint fails to state a plausible claim for retaliation or discrimination.   (ECF No. 13 at 5.)

#### i.      Title VII and the WVHRA

Plaintiff's factual allegations are insufficient to support the claims asserted against the Defendants.   For example, Plaintiff purports to bring a claim that she was not hired because of her sex in violation of Title VII and the WVHRA.   (*See generally* ECF No. 1, ¶¶15–70.)

To do so, however, Plaintiff is "required to allege facts to satisfy the elements of a cause of action created by [Title VII] i.e., in this case, that the [defendant] 'failed or refused to hire' [her] 'because of [her] ... sex[.]'" *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting 42 U.S.C. § 2000e– 2(a)(1)).   The requirements for Plaintiff to prove a violation of the WVHRA are the same.   *See Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 457 (1995) (holding an employment discrimination claim under the WVHRA mirrors an identical claim under Title VII).   Likewise, to state a retaliation claim, a plaintiff must allege facts permitting an inference that she suffered materially adverse employment action because of a protected activity.   *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018).

Assertions, as here, of "a formulaic recitation of the elements" will not suffice.   *McCleary-Evans*, 780 F.3d at 585 (citations omitted).   Plaintiff's assertions that the Defendants refused to hire her for positions due to her gender, and in retaliation, fail to meet the basic pleading standard.

14

(*See* ECF No. 1, ¶¶51; 59.)   Plaintiff claims that less qualified applicants were hired to positions she applied to.   (*Id*.)   This does not suffice, given that allegations that adverse actions took place "despite experience" and "employer accolades" are insufficient to permit an inference of discrimination or retaliation.   *See McCleary-Evans*, 780 F.3d at 586.   As such, the complaint is wholly lacking in factual content regarding the circumstances of the alleged failure to hire and are thus insufficient to support a Title VII claim thereon.   *See id.* ("While the allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff is consistent with discrimination, it does not alone support a reasonable inference that the decisionmakers were motivated by bias[;] [plaintiff] can only speculate that the persons hired were not better qualified, or did not perform better during their interviews, or were not better suited based on experience and personality for the positions.").

Accordingly, Plaintiff's Title VII and WVHRA claims are **DISMISSED**.

ii.      *Title IX*

Plaintiff's Title IX claims are likewise insufficiently supported by factual allegations. Courts in the Fourth Circuit generally evaluate Title IX employment discrimination claims under the same analysis as Title VII.   *Reid v. James Madison Univ*., 90 F.4th 311, 319 (4th Cir. 2024) (citing *Preston v. Comm. Ex rel. New River Cmty. Coll*., 31 F.3d 203, 206 (4th Cir. 1994)). Accordingly, the analysis for Plaintiff's Title IX claim is nearly identical to the analysis of her Title VII and WVHRA claim.

In support of her claim, Plaintiff alleges that various actions, including the denial of field trips, denial of pay increases, the failure to discipline a parent's outburst, alleged misconduct during an evaluation, and several failures to hire were the result of discrimination and retaliation

15

for filing a Title IX complaint.   (ECF No. 1, ¶¶15–70.)   These allegations are each conclusory and need not be accepted as true by the Court.   *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Accordingly, Plaintiff's Title IX claim is **DISMISSED**.

### iii.     Leave to Amend

The Defendants suggest that all of Plaintiff's claims should be dismissed with prejudice. (*See* ECF No. 13 at 7.)   However, "unless the grounds for dismissal clearly indicate that no amendment in the complaint could cure the defects in the plaintiff's case," then dismissal without prejudice is required with opportunity for plaintiff to seek leave to amend.   *See Goode v. Cent. Virginia Legal Aid Soc'y, Inc.*, 807 F.3d 619, 623 (4th Cir. 2015); *see, e.g., Hancock v. Americo Fin. Life & Annuity Ins. Co.*, 723 F. App'x 241, 242 (4th Cir. 2018) (dismissing appeal and remanding case for amendment of complaint).

Here, Plaintiff's claims against the Defendants are deficient because Plaintiff fails to plead sufficient facts supporting the claims.   As such, dismissal of those claims against the Defendants must be without prejudice, and Plaintiff must be given an opportunity to amend the complaint or to "stand on the complaint" as the circumstances may dictate.   *Goode*, 807 F.3d at 629. Accordingly, in the event Plaintiff seeks to pursue her claims against the Defendants in this Court, Plaintiff must, within 21 days of the date of this order, file a motion for leave to amend the complaint, accompanied by a proposed amended complaint.

## IV.     CONCLUSION

Based on the foregoing, the court **GRANTS** the Defendants' Motion to Dismiss.   (ECF No 9.)   Plaintiffs' claims against Defendants Anthony Tagliente, Jacob Jones, and Jeff Huffman in their official capacities are **DISMISSED**.   Plaintiff's claim for punitive damages against

BCBOE is **DISMISSED**.   Plaintiff's claims arising from acts occurring outside of the applicable limitations' periods under Title VII, the WVHRA, and Title IX are **DISMISSED**.   Plaintiff's remaining claims against Defendants Anthony Tagliente, Jacob Jones, and Jeff Huffman in their individual capacities and against BCBOE are **DISMISSED WITHOUT PREJUDICE**.   Plaintiff is allowed 21 days from the date of this order to file a motion for leave to amend the complaint, in accordance with the requirements set forth herein

    **IT IS SO ORDERED**.

    The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     March 17, 2026

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

17